UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MONA CLARK,

        Plaintiff,

v.                                          Case No. 18-C-1310

ANDREW M. SAUL,
Commissioner of Social Security,

        Defendant.

## DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Mona Clark filed this action for judicial review of a decision by the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act. Clark contends that the administrative law judge's (ALJ) decision is flawed because the ALJ failed to address her piriformis syndrome and lower back impairments. For the reasons that follow, the decision of the Commissioner will be affirmed.

## BACKGROUND

On August 21, 2014, Clark filed applications for DIB and SSI, alleging disability beginning October 1, 2010. She listed blind right eye, high blood pressure, high cholesterol, migraines, high anxiety disorder, asthma, ischemic optic neuropathy in both eyes, pseudophakia, and piriformis syndrome as the conditions that limited her ability to work. R. 49–50. The applications were denied initially on February 19, 2015, and upon reconsideration on July 9, 2015. Clark then

requested a hearing before an ALJ. ALJ Thomas Wang conducted a hearing on July 27, 2017. Clark, who was represented by counsel, and a vocational expert (VE) testified. R. 30–48.

Clark reported that she experienced sudden vision loss in her left eye in 2007 and that her doctor monitored her for retinal detachment. R. 34. As a result of the vision loss, she began experiencing anxiety and migraine headaches and struggled to manage her blood pressure. She also indicated that she has asthma and that it is well controlled. R. 35. Clark testified that she was unable to work because her work as a bank teller and in the medical field required that she use computers, and her vision loss made it difficult to read the information on the computer screen. R. 34–35.

In a written decision dated September 18, 2017, the ALJ concluded Clark was not disabled. R. 13–24. Following the Agency's sequential evaluation process, the ALJ found at step one that Clark met the insured status requirements through March 31, 2012, and had not engaged in substantial gainful activity since October 1, 2010, the alleged onset date. R. 15. At step two, the ALJ determined Clark had the following severe impairments: bilateral ischemic optic neuropathy; optic atrophy, left worse than right; loss of left eye vision; asthma; migraine headaches; and obesity. R. 16. He found Clark's hypertension, high cholesterol, posterior capsular opacity of the right eye, an epiretinal membrane of the left eye, cataracts, a small hiatal hernia, kidney stone, chronic sinusitis, a deviated septum, and generalized anxiety were nonsevere impairments. *Id.* At step three, the ALJ concluded Clark's impairments or combination of impairments did not meet or medically equal any listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 17.

After reviewing the entire record, the ALJ determined Clark has the residual functional capacity (RFC) to perform medium work "except the claimant's ability to push and pull is limited

2

as per the exertional weight limits; can never climb ladders, ropes, or scaffolds; can frequently climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; no commercial driving; can perform occasional computer work; can have occasional exposure to irritants, such as fumes, odors, dusts, and gases; no use of hazardous machinery; no exposure to unprotected heights; can perform jobs with occasional depth perception and peripheral acuity; and cannot perform fine detail inspection work." R. 18. With these limitations, the ALJ found at step four that Clark was unable to perform any past relevant work but concluded there are jobs that exist in significant numbers in the national economy that Clark can perform, such as packer and off line assembly worker. R. 22–23. Based on these findings, the ALJ concluded Clark was not disabled within the meaning of the Social Security Act. R. 23. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Clark's request for review. Thereafter, Clark commenced this action for judicial review.

## LEGAL STANDARD

The final decision of the Commissioner will be upheld if the ALJ applied the correct legal standards and supported her decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is "such relevant evidence as a reasonable mind could accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusion drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the Social Security Administration's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

Clark's sole argument is that the ALJ erred at step three of the five-step sequential evaluation process by failing to address her piriformis syndrome and lower back impairments. Although the regulations require the ALJ to consider the "combined effect of all of the claimant's ailments, regardless of whether 'any such impairment, if considered separately, would be of sufficient severity," *Clifford*, 227 F.3d at 873 (quoting 20 C.F.R. § 404.1523), the burden remains with the plaintiff to demonstrate how her non-severe impairments impact or exacerbate her disabling condition. In this case, Clark did not meet her burden of proving the effect of piriformis syndrome and lower back conditions on her capacity to work. *See* 20 C.F.R. § 404.1512(a).

When asked what health problems precluded her form working, Clark only discussed her vision loss, anxiety, migraines, blood pressure, and asthma. She did not mention piriformis syndrome or lower back impairments at the hearing, and did not list lower back issues as one of the illnesses, injuries, or conditions that limited her ability to work on the disability report. Although the record mentions piriformis syndrome and lower back conditions, Clark must do more than

4

simply note the existence of these conditions. She must also establish the severity of those conditions and the limitations they impose. *See Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (the issue "is not the existence of these various conditions . . . but their severity and, concretely, whether . . . they have caused her such severe pain that she cannot work full time"); *see also Johnson v. Colvin*, No. 2:13-cv-138, 2014 WL 4722529, at *4 (N.D. Ind. Sept. 22, 2014) ("The mere diagnosis of an impairment does not establish that the impairment affects the individual's ability to perform basic work activities."). Here, none of the records suggest that Clark had limitations due to the conditions described. Clark first complained of right thigh and buttock pain in July 2014. Her treating physician noted right buttock tenderness around the piriformis muscle and recommended physical therapy. R. 503–05. On September 3, 2014, Clark presented for a follow-up appointment, reported that her piriformis syndrome has improved with physical therapy, and indicated that she will continue physical therapy. There is no evidence of further treatment of the condition. As to her lower back condition, a July 27, 2012 x-ray revealed slight levoscoliosis and mild sacroiliac joint degenerative disease. R. 413. In October 2015, moderate levoscoliosis as well as severe degenerative changes were noted. R. 578. The record does not explain the significance of these findings or whether Clark's condition impacted her ability to work. In short, the record does not allude to either piriformis syndrome or lower back concerns as the source of any of Clark's limitations.

In addition, Clark does not explain what additional limitations she might have as a result of these conditions. Rather than point to evidence in the record that would support her claim that piriformis syndrome and lower back issues exacerbate her disabling condition or impact her ability to work, Clark merely speculates that these "impairments may contribute to the cumulative effect

5

of other impairments." Pl.'s Br. at 10, Dkt. No. 9. Without any suggestion from Clark or a medical source that piriformis syndrome or lower back impairments created any limitations, however, the ALJ did not err in failing to find his own.

Clark's primary complaints were vision loss, migraines, anxiety, high blood pressure, and asthma. The ALJ relied on Clark's medical history, the statements of medical sources, and Clark's hearing testimony to conclude that she did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 and to later assess Clark's RFC. Because it is Clark's burden to provide proof that piriformis syndrome or lower back impairments would impact or limit her capacity to work, there is no error on the part of the ALJ.

## CONCLUSION

For the reasons given above, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this   16th   day of September, 2019.

s/ William C. Griesbach<br>
William C. Griesbach, Chief Judge<br>
United States District Court